# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARCUS LORENZO JEW,**

    Plaintiff,

  v.                                                    Case No. 19-CV-1136

**S. STEVEN,** *et al.***,**

    Defendants.

## SCREENING ORDER

Marcus Lorenzo Jew, an inmate confined at the Green Bay Correctional Institution ("GBCI"), filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. This matter is before the court on Jew's motion for leave to proceed without prepaying the filing fee and for screening of his complaint.

The court has jurisdiction to resolve Jew's motion to proceed without prepaying the filing fee and to screen the complaint in light of Jew's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

*1. Motion for Leave to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act (PLRA) applies to this case because Jew was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 29, 2019, the court ordered Jew to pay an initial partial filing fee of $15.12. (ECF No. 8.) Jew paid that fee on September 23, 2019. The court will grant Jew's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.[1]

*2. Screening the Complaint*

*2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

---

[1] On August 20, 2019, Jew filed a second motion to proceed without prepayment of the filing fee. (ECF No. 6.) Because the court is granting his first such motion, the court will deny his second motion as moot.

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and it holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Jew's Allegations*

Jew sues Registered Nurse ("RN") S. Steven, Daniel LaVoie, Health Services Unit ("HSU") Manager Ms. Lusty, J. Perttu, Complaint Examiner Emily Davidson,

3

Advanced Practice Nurse Prescriber ("APNP") Peter, and RN Jane Doe. All defendants are alleged to be employees of the GBCI. (ECF No. 1 at 2.)

Jew alleges that he has been trying since April 2019 to get a "proper diagnosis and medication" for a lip condition. *Id.* On April 26, 2019, RN Steven saw Jew and prescribed him petroleum jelly, but Jew informed Steven that the jelly did not help. *Id.* On May 20, 2019, Jew saw LaVoie, who referred him to dental care. *Id.* About a week later, Jew saw RN Jane Doe, who prescribed him "Bacitracin" ointment. *Id.* at 2–3. On June 6, 2019, Jew saw APNP Peter, who prescribed A&D ointment. *Id.* A day earlier, on June 5, 2019, Jew wrote HSU Manager Lusty about his ongoing issues with his lips. *Id.* at 3. About a week later, she responded that he had "seen the doctor[,] dentist[,] and most recently the APNP" and had no infection. *Id.* She advised him to continue the prescribed treatment. *Id.* Jew says he has written to HSU "several times regarding my issue and the treatment concerning my condition hasn't been effective to resolve the problem." *Id.*

On July 23, 2019, Jew saw Dr. Anzalone (not a defendant), who told Jew that he may have the herpes simplex virus and prescribed a cream. *Id.* Jew never received the cream and wrote to HSU about it. *Id.* On August 1, 2019, Jew again saw Dr. Anzalone, who informed Jew that GBCI would not give him the cream because of its cost. *Id.* at 3–4. The doctor instead prescribed the same medication in pill form. *Id.* at 4. Jew alleges that, because the medication is used to treat viruses such as shingles and herpes, he was wrongly informed by GBCI medical staff that he did not have an infection. *Id.* Jew alleges that he has still not received a proper diagnosis,

4

blood work, or urine testing and describes his course of treatment as "mere 'guess work.'" *Id.* He insists the medical staff knowingly provided inadequate medical care. *Id.* at 5.

Jew alleges that Perttu dismissed an inmate complaint he filed in May 2019 because "ICE has no reason to believe the care and treatment offered is not adequate to the demonstrated need." *Id.* at 4. Jew appealed, and Davidson dismissed the appeal for the same reasons. *Id.*

Jew seeks compensatory and punitive damages, reimbursement of the filing fee, and "better health care provided to all inmate/prisoner[]s." *Id.* at 6.

*2.3 Analysis*

The Court reviews claims regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez*, 792 F.3d at

776. Neither negligence nor medical malpractice amount to a constitutional violation. *See Farmer*, 511 U.S. at 835–36; *Estelle*, 429 U.S. at 106; *Brown v. Peters*, 940 F.3d 932, 937 (7th Cir. 2019).

Assuming that Jew's lip condition qualifies as an objectively serious medical condition, his allegations do not show that the medical staff were deliberately indifferent to his condition. Jew alleges that between April 26, 2019, and August 1, 2019, he saw various medical professionals at GBCI for treatment of his lips. In that time, he was examined by two RNs, an APNP, a doctor, and a dentist and received petroleum jelly, Bacitracin, and ointment. When none of these treatments worked, he was sent to see Dr. Anzalone, who diagnosed the problem as herpes and prescribed a cream. Although that cream was not available, Jew was given the same medication in pill form. These allegations show that, during the three months of treatment for Jew's lips, the staff tried various remedies for his conditions. When one treatment did not work, he was sent to another professional and prescribed a new treatment. The medical staff did not simply "persist[] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Jew was eventually sent to Dr. Anzalone, who gave him medication to treat Jew's infection. Although Jew believes that the defendants incorrectly determined that his condition was not the result of an infection, that allegation suggests only medical malpractice, which cannot sustain an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106. The court need not accept as true Jew's conclusory allegation that the medical staff knowingly

6

mistreated him. *See Iqbal*, 556 U.S. at 679. His allegations against defendants Steven, LaVoie, Jane Doe, and Peters do not amount to deliberate indifference.

Jew does not state a claim against HSU Manager Lusty. Lusty did not see Jew for treatment but merely responded to his written concerns and advised him to continue his prescribed treatment. Lusty, as manager of the HSU, "may not be held liable for the unconstitutional conduct of [her] subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*; *see Aguilar v. Gaston–Camara*, 861 F.3d 626, 630 (7th Cir. 2017). Moreover, because the court concludes that the medical staff was not deliberate indifferent to Jew's lip condition, there is no unconstitutional conduct for which she could be liable.

Nor does Jew state a claim against Perttu or Davidson for denying his grievance or appeal. *See George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

**THEREFORE, IT IS ORDERED** that Jew's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**. His second such motion (ECF No. 6) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Jew shall collect from his institution trust account the $334.88 balance of the filing fee by collecting monthly payments from Jew's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Jew is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Jew is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 13th day of December, 2019.

**BY THE COURT:**

s/*Nancy Joseph*
Nancy Joseph
United States Magistrate Judge